Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6755 | **DATE** | 9/23/2003 |
| **CASE TITLE** | Freddie J. Carroll vs. Yellow Freight Systems, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court grants defendant's motion for summary judgment [31-1]. This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| No notices required, advised in open court. | |
| No notices required. | number of notices |
| Notices mailed by judge's staff. | SEP 2 4 2003 date docketed |
| Notified counsel by telephone. | |
| ✓ Docketing to mail notices. | |
| ✓ Mail AO 450 form. | docketing deputy initials |
| Copy to judge/magistrate judge. | SEP 2 4 2003 date mailed notice |
| TBK courtroom deputy's initials | 03 SEP 24 AM 8:25 |
| | Date/time received in central Clerk's Office / mailing deputy initials |

Document Number: 41

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FREDDIE J. CARROLL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Ronald A. Guzmán |
| ) | |
| YELLOW FREIGHT SYSTEMS, INC., ) | 01 C 6755 |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Freddie J. Carroll ("Carroll") has brought this action against his former employer, Yellow Freight Systems, Inc. ("Yellow Freight"), under Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") for racial harassment while employed and racial discrimination regarding his discharge. Yellow Freight moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth in this Memorandum Order and Opinion, the Court grants the motion.

DOCKETED
SEP 2 4 2003

## FACTS

On May 19, 1989, Yellow Freight hired Carroll, a black male, for the position of casual mechanic. (Pl.'s LR 56.1(b)(3)(B) Stmt. ("Pl.'s LR 56.1(b)(3)(B)") ¶ 1.) He submitted an employment application prior to being hired. (*Id.* ¶ 2.) He completed a second application, with the help of his wife, and submitted it five or six months later. (*Id.* ¶ 3.) On May 20, 1990 the Manager of Yellow Freight's Chicago Terminal, Bill Bogdanovic, considered Carroll for a full-time mechanic position. (Def.'s LR 56.1(a)(3) Stmt. ("Def.'s LR 56.1(a)(3)") ¶ 36.) He reviewed Carroll's application and because he

41

noticed gaps in his employment history (*id.* ¶ 37), he asked Carroll to submit a third application (*id.* ¶ 41). Carroll did so and was made a full-time mechanic on September 1, 1990. (Pl.'s LR 56.1(b)(3)(B) ¶ 4.)

Yellow Freight has a policy that prohibits dishonesty on employment applications. (Def.'s LR 56.1(a)(3) ¶ 64.) Dishonesty on an employment application is grounds for discharge at any time during employment. (*Id.* ¶ 64.) The policy can be found in the Human Resources Policy and Procedure Manual (*id.* ¶ 68) and on the employment application itself. (*Id.* ¶ 64, 66; Carroll Dep. Ex. 2.) Specifically, the employment application states:

> **IMPORTANT-PLEASE READ CAREFULLY**
> I certify that the information supplied by me in the application is true, and I understand that any misrepresentation *or the omission of any material facts* shall be sufficient grounds for my discharge *at any time during my employment* . . .

(Carroll Dep., Ex. 2, D66 (emphasis added).) Carroll's signature appears directly below this section on the third employment application. (*Id.*) The application also contains the question "Have you ever been convicted of a felony?" and provides a "yes" and "no" box that the applicant is to check. (*Id.*; Pl.'s LR 56.1(b)(3)(B) ¶ 9.) Carroll left that question blank. (Pl.'s LR 56.1(b)(3)(B) ¶ 9.) However, Carroll had been convicted of felony charges (*id.* ¶ 8), for armed robbery (Def's. LR 56.1(a)(3) ¶¶ 15-18), and aggravated battery (*id.* ¶¶ 19-23).

During his employment at Yellow Freight, Carroll alleges that he was subjected to harassment by fellow co-workers, some of which appeared to him as racially motivated and that he reported these incidents verbally and eventually in writing. (Pl.'s

2

LR 56.1(b)(3)(B) ¶¶ 22-27, 35.) In April 1992, Carroll wrote a letter to Bogdanovic and his superior, Steve Jansen, regarding "the harassment [he] endured for approximately three years." (*Id.* ¶ 27.) On June 29, 1995, after injuring his back on the job, Carroll asked his supervisor, Paul Bochenek, for an injury report form. (*Id.* ¶ 34.) Bochenek responded by saying "if you do this I'm going to fire your ass for any little thing" and "sit you f***ing ass down right here." (*Id.*) Carroll described the incident in a letter written to Bogdanovic on July 3, 1995. (*Id.* ¶ 35.) He also filed a grievance with his union on July 5, 1995. (*Id.* ¶ 36.) One month later, on August 4, 1995, Carroll was fired. (*Id.* ¶ 38.)

Yellow Freight claims that on July 26, 1995, an anonymous caller phoned Bogdanovic informing him that Carroll was a convicted felon. (Def's. LR 56.1(a)(3) ¶ 49.) In response, Bogdanovic retrieved Carroll's file to review his application. (*Id.* ¶ 54.) Yellow Freight claims that the "No" box next to the felony conviction question was checked. (*Id.* ¶ 9.) However, for the purposes of the motion for summary judgment, the Court accepts Carroll's contention that both the "Yes" and "No" boxes were left blank. There is no dispute that the "Yes" box was not checked.

Bogdanovic then asked a member of Yellow Freight's Security Department to perform a criminal background check on Carroll. (*Id.* ¶ 57.) After discovering Carroll's convictions for aggravated battery, he was terminated. (*Id.* ¶ 58.) Yellow Freight claims that Carroll was fired for lying about the convictions in accordance with its honest policy, not because of the convictions. (*Id.* ¶ 70.) Carroll maintains that, because he did not check the "No" box, Yellow Freight's version of events is "suspicious." (Pl.'s Response

Br. at 12-13.) Instead, Carroll believes that the harassment he endured and the timing between his grievance regarding the injury report incident and his firing show that he was terminated because of his race. (*Id.*).

Carroll filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR"), that was cross filed with the Equal Opportunity Employment Commission ("EEOC"), on August 22, 1995. (Pl.'s LR 56.1(b)(3)(B) ¶ 45.) Carroll discussed the harassment with the intake officer and provided copies of the letters he sent to Bogdanovic and Jansen. (*Id.* ¶ 47). As for the actual charge, it stated:

> On August 4, 1995 I was discharged from my position as mechanic. I was hired May 27, 1989. William Bogdanovic (white) Area Maintenance Manager told me I was discharged for falsification of my application. I believe I have been discriminated against because of my race, black in that:
> > I had a good work performance record.
> > I did not falsify my application.
> > Rocky (last name unknown, white) Mechanic was accused of falsifying his application but he was not discharged.

(Carroll Dep. Ex. 10, Charge of Discrimination.) The investigation resulted in a finding of "lack of substantial evidence." (IDHR Investigation Report.) In the investigation report, the IDHR listed the August 4, 1995 termination as the only alleged violation. (IDHR Investigation Report). Carroll received his right to sue letter on May 29, 2001. (Compl., Ex. 2.) Thereafter, Carroll sued Yellow Freight for discrimination and harassment based on race.

## DISCUSSION

Summary judgment should be entered when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In considering a motion for summary judgment, all facts and reasonable inferences drawn therefrom must be viewed in a light most favorable to the nonmoving party. *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). "However, the mere existence of an alleged factual dispute between the parties is not sufficient to defeat a motion for summary judgment." *Spath v. Hayes Wheels Int'l-Ind. Corp.*, 211 F.3d 392, 396 (7th Cir. 2000). The nonmoving party is required to reveal the existence of a "genuine issue of triable fact and that there is evidence on which a jury could reasonably find for him." *Id.*

### I. Scope of the EEOC Charge

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a)(1). Prior to filing a suit in federal court "[a] plaintiff must file a timely charge with the EEOC encompassing the acts complained of . . . ." *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985). The charge serves the duel purpose of notifying the employer of the alleged discriminatory acts and providing the EEOC an opportunity to

5

investigate the veracity of those allegations. *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 542 (7th Cir. 1988). It also "affords the EEOC 'an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party [is] permitted to file a lawsuit.'" *Babrocky*, 773 F.2d at 863. (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974)). "Thus the filing requirement is central to Title VII's statutory scheme." *Id.* Only after the EEOC has completed its investigation and issued a right to sue letter may a plaintiff seek judicial relief. *Alexander*, 415 U.S. at 47.

The "failure to file a charge that encompasses all of the allegations in the complaint filed on the basis of the charge is very similar to the timeliness requirement." *Babrocky*, 773 F.2d at 863. Thus, as a general rule "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [the] EEOC charge," for to allow such a claim "would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This means that "the scope of the subsequent judicial proceedings is limited by the nature of the charges filed with the EEOC," *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (1992). Put another way, an employee may not allege certain acts to the EEOC and seek judicial relief for others. *Id.* This rule is a "condition precedent with which Title VII plaintiffs must comply." *Cheek*, 31 F.3d at 500; *see Babrocky*, 773 F.2d at 863.

However, Title VII is remedial legislation, see *Philbin v. General Electric Capital Auto Lease, Inc.*, 929 F.2d 321, 323 (7th Cir. 1991), and this condition precedent is "to be construed and applied broadly," *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*,

538 F.2d 164, 167 (7th Cir. 1976), because EEOC charges are filed by laypersons. *Cheek*, 31 F.3d at 500. Thus, the charge need not allege every fact that forms the basis of the claim in the complaint. *Id.* Rather, "all Title VII claims set forth in a complaint are cognizable that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (quoting *Jenkins*, 538 F.2d at 167).

The *Jenkins* test establishes two requirements. *Id.* First there must be a reasonable relationship between the allegations in the charge and the complaint. *Id.* This means that "the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*. *Cheek*, 31 F.3d at 501 (emphasis added). For example, in *Cheek*, the court held that the allegation of sex discrimination in an EEOC charge and sex harassment in a subsequent complaint were not reasonably related because an employer can discriminate on the basis of sex in numerous ways. *Id.* at 501. The court stated that "claims are not alike or reasonably related unless there is a factual relationship between them." *Id.* Second, the claim in the complaint must "reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* This requires the court to speculate "as to what the EEOC might or might not discover in the course of an investigation." *Id.* at 500.

On its face, Carroll's EEOC charge alleges race discrimination with regard to his termination. The word harassment is nowhere in the charge and, more importantly, no facts of harassment are alleged. The charge and complaint in this case are similar to those in *Rush*.

In *Rush*, the plaintiff's EEOC charge stated:

> I began my employment as a Part-time word processor on

7

> November 11, 1985. I became a Full-time word processor on January 1, 1988. On May 6, 1988 I was told by Sharon Funston, Supervisor that I was being terminated. I believe I have been discriminated against because of my race, black.

*Rush*, 966 F.2d at 1108 n.9. The judicial complaint alleged several violations of Title VII including harassment based on racial comments and disparate treatment. *Id.* The *Rush* court held that to allow the broad and opened-ended statement, "I believe I have been discriminated against because of my race, black," to preserve any claim that might relate to race would frustrate the purpose of the EEOC. *Id.* at 1110. The court explained that requiring some degree of specificity in a charge is not a "mere technicality," *Id.* at 1111, and that the only conduct specified related to the plaintiff's termination. *Id.* at 1112. Therefore, only those claims reasonably related to the discharge were preserved for trial. *See id.* at 1111 (affirming district court's preservation of claims of racially discriminatory discharge and denial of promotion as well as those claims derived therefrom). Thus, the court determined that racial harassment is not like or reasonably related to racially discriminatory termination.

The court in *Rush* recognized that the plaintiff had an attorney when she filed the charge, *Id.* at 1112, and that it was not unreasonable to require some additional specificity. *Id.* at 1112. However, two years later the Court of Appeals held that a plaintiff must describe, "with some degree of specificity, the conduct she considered discriminatory," despite the fact that was not a professionally trained lawyer. *Cheek*, 31 F.3d at 502. Therefore, *Rush* and *Cheek* require a charge to contain some degree of specificity regarding the alleged discriminatory or harassing acts in order to preserve those claim for trial even if the plaintiff is not represented by an attorney when the charge

8

is filed. Carroll did not allege any acts of harassment in his EEOC charge and, therefore, failed to preserve his harassment claim for trial.

Carroll's charge describes only those events surrounding his termination. It states in general terms that Carroll believed he had been discriminated against because of his race. *Rush* prohibits the Court from construing that statement so as to include any possible claims involving race. *Rush*, 966 F.2d at 1111-12. Rather, the Court must consider his general statement along with the specific factual allegations contained in the charge. *See id.* (affirming dismissal of plaintiff's racial harassment claim because, "to the extent that [plaintiff] was specific regarding . . . racial discrimination in the charge she filed, it was by referring only to her termination."). Therefore, the Court holds that Carroll's racial harassment claim is barred as beyond the scope of the EEOC charge.

The Court recognizes that some courts have looked beyond the "four corners" of the charge to preserve a claim. *See Rush*, 966 F.2d at 1110-11 (holding that plaintiff's three page handwritten affidavit, filed the same day as the EEOC charge, preserved a claim of discriminatory promotion); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1375 (7th Cir. 1985) (holding that a hand written affidavit, taken together with an EEOC questionnaire, were sufficient to preserve a sex discrimination claim despite the lack of any such allegation in the actual EEOC charge); *Jackson v. Local 707, Int'l Bhd. of Teamsters, AFL-CIO*, No. 95 C 7510, 2002 WL 460841, at *3 (N.D. Ill. Mar. 26, 2002) (allowing a claim of racial harassment based on remarks in an EEOC questionnaire and misrepresentations by EEOC representative that the claim would be investigated); *Finley v. Ill. Dep't of Public Aid*, No 97 C 3381, 1998 WL 26156, at *6 (N.D. Ill. Jan. 12, 1998) (allowing a claim of racial discrimination based on information contained in an intake

question and statements made to an EEOC intake worker). However, not every piece of information filed with an EEOC charge is sufficient to preserve a claim not found in the charge. *See Cheek*, 31 F.3d at 502-03 (stating that letter sent to EEOC could only be considered to the extent that it clarified or amplified allegations contained in charge but not to extent that it expanded scope of those allegations).

Unlike the cases relied on by Carroll, he has no intake questionnaire for the Court to examine. Nonetheless, Carroll argues that his affidavit, stating that he discussed harassment with the intake officer and provided the letters he sent to Bogdanovic and Jansen, should suffice. (Pl's. Response Br. at 5; Carroll Aff. ¶¶ 3-5.)

In *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000), the court made clear that oral communications with an intake officer are insufficient to preserve a claim not contained in the charge absent some misleading information on the part of the intake officer. *Id.* Specifically, the court stated that "an oral charge, . . . not reflected in nor reasonably related to the charge actually filed, is not a sufficient predicate for a claim of . . . harassment in [a] civil action." *Id.*

Neither the affidavit nor Carroll's deposition state that he ever completed an intake questionnaire. (Carroll Dep. at 137-38.) Furthermore, there is no evidence that the intake officer had misleaded Carroll into believing that a claim of harassment would be investigated. Accordingly, because Carroll's oral charge of racial harassment was not reasonably related to his written charge of racial discrimination, the Court will not rely on it.

Looking to the inter-office correspondence upon which Carroll seeks to rely to

question and statements made to an EEOC intake worker). However, not every piece of information filed with an EEOC charge is sufficient to preserve a claim not found in the charge. *See Cheek*, 31 F.3d at 502-03 (stating that letter sent to EEOC could only be considered to the extent that it clarified or amplified allegations contained in charge but not to extent that it expanded scope of those allegations).

Unlike the cases relied on by Carroll, he has no intake questionnaire for the Court to examine. Nonetheless, Carroll argues that his affidavit, stating that he discussed harassment with the intake officer and provided the letters he sent to Bogdanovic and Jansen, should suffice. (Pl's. Response Br. at 5; Carroll Aff. ¶¶ 3-5.)

In *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000), the court made clear that oral communications with an intake officer are insufficient to preserve a claim not contained in the charge absent some misleading information on the part of the intake officer. *Id.* Specifically, the court stated that "an oral charge, . . . not reflected in nor reasonably related to the charge actually filed, is not a sufficient predicate for a claim of . . . harassment in [a] civil action." *Id.*

Neither the affidavit nor Carroll's deposition state that he ever completed an intake questionnaire. (Carroll Dep. at 137-38.) Furthermore, there is no evidence that the intake officer had misleaded Carroll into believing that a claim of harassment would be investigated. Accordingly, because Carroll's oral charge of racial harassment was not reasonably related to his written charge of racial discrimination, the Court will not rely on it.

Looking to the inter-office correspondence upon which Carroll seeks to rely to

question and statements made to an EEOC intake worker). However, not every piece of information filed with an EEOC charge is sufficient to preserve a claim not found in the charge. *See Cheek*, 31 F.3d at 502-03 (stating that letter sent to EEOC could only be considered to the extent that it clarified or amplified allegations contained in charge but not to extent that it expanded scope of those allegations).

Unlike the cases relied on by Carroll, he has no intake questionnaire for the Court to examine. Nonetheless, Carroll argues that his affidavit, stating that he discussed harassment with the intake officer and provided the letters he sent to Bogdanovic and Jansen, should suffice. (Pl's. Response Br. at 5; Carroll Aff. ¶¶ 3-5.)

In *Vela v. Village of Sauk Village*, 218 F.3d 661, 664 (7th Cir. 2000), the court made clear that oral communications with an intake officer are insufficient to preserve a claim not contained in the charge absent some misleading information on the part of the intake officer. *Id.* Specifically, the court stated that "an oral charge, . . . not reflected in nor reasonably related to the charge actually filed, is not a sufficient predicate for a claim of . . . harassment in [a] civil action." *Id.*

Neither the affidavit nor Carroll's deposition state that he ever completed an intake questionnaire. (Carroll Dep. at 137-38.) Furthermore, there is no evidence that the intake officer had misleaded Carroll into believing that a claim of harassment would be investigated. Accordingly, because Carroll's oral charge of racial harassment was not reasonably related to his written charge of racial discrimination, the Court will not rely on it.

Looking to the inter-office correspondence upon which Carroll seeks to rely to

support that the race discrimination alleged in his charge is related to the race harassment claim in his complaint, the Court notes that, while these memoranda contained the word harassment, none alleged *racial* harassment. In one, Carroll states "I'm writing in regards to the harassment I've endured for approximately three years," and, "I've wanted to write to you before, in hopes that you could help resolve the harassment problem, but did not for fear of losing my job." (Jansen Dep., Ex. 1, Mem. from Bogdanovic to Jansen of 4/13/92.) The letter describes the incident regarding the threat on his life, that some employees said there was a conspiracy against him, and that some employees "passed gas" and belched while he was having lunch. (*Id.*) None of these statements suggest *racial* harassment. The other statements concerning harassment are likewise devoid of any mention of race. (*Id.*). While the memorandum suggest that Carroll had a problem with fellow co-workers, it does not mention racial harassment.

In the other letter, Carroll describes the altercation with Bochenek and the injury report. (Bogdanovic Dep., Ex. 20, Letter from Carroll to Bogdanovic of 7/3/95.) Bochenek's statements "You do this and I'm going to fire your ass for any little thing," and "sit your f***ing ass down right here," suggest that he threatened retaliation for filing an injury report, not that he was discriminating against Carroll because of his race. (*Id.*) Like the first letter, there is no mention of race as a factor in the harassment alleged. Therefore, on these facts the Court cannot conclude that the memoranda were sufficient to preserve a claim of racial harassment that was not contained in the charge.

Finally, even assuming that the letters sufficiently informed the EEOC of allegations of racial harassment, the Court would still be required to follow *Cheek*. In *Cheek*, the court stated that a letter written to the EEOC could "be considered an

11

amendment to the original charge with the meaning of 29 C.F.R. § 1601.12(b). *Cheek*, 31 F.3d at 502. Therefore, a letter can be considered to the extent that it "clarif[ies] or amplif[ies] the allegations contained within the charge, *id.*, but not to the extent that they amount[] to additional allegations that expand[] the scope of the allegations in the original charge. *Id.* at 503. Thus, because the letter related to allegations unrelated to any allegations contained in the charge they were insufficient to preserve the additional claim. *Id.* So it is here. The internal corporate memos discuss harassment, albeit not racial harassment. His charge mentions only his termination as a discriminatory act. (Compl. Ex 1). Because harassment is not like or reasonably related to discrimination, particularly when the acts of harassment are completely different than the acts alleged in the complaint, the memos do not "clarify or amplify" his charge. Rather, they contain additional allegations that would expand the scope of the charge. Under *Cheek*, the Court cannot permit them to do so. Accordingly, the Court grants Yellow Freight's motion for summary judgment as to Carroll's Title VII race harassment claim.

## II. Race Discrimination

### A. Direct Method

There are three types of circumstantial evidence from which intentional discrimination can be established under the direct method. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). "The first consists of suspicious timing, ambiguous statement oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *Id.* This is the most common type, *id.*, and the

12

type Carroll relies on. (Pl's Resp. Br. at 8.) Specifically, Carroll relies on suspicious timing as the circumstantial evidence of Yellow Freight's discriminatory intent in discharging him. (Pl's. Br. at 12.) Carroll points to the incident involving the injury report, the years of harassment, and the timing between when he complained about it for the last time and when he was fired. (*Id.*) First, the record provides no indication that Bochenek's remarks were racially motivated. While certainly inappropriate, there is nothing to indicate that his statements were motivated by Carroll's race. *See Harrison v. Swedish Covenant Hosp.*, No. 95 C 547, 1997 WL 321688, at *10-11 (N.D. Ill. June 6, 1997) (finding that insensitive comments did not create a triable issue of fact as to racial harassment because comments were not racial in nature).

Furthermore, even if the statements could be construed as racially discriminatory, they would only be relevant if they were "made by a decisionmaker and related to the employment decision at issue." *Miller v. Am. Family Mut. Life. Ins. Co.*, 203 F.3d 997, 1005 (7th Cir. 2000); *see Gorence v. Eagle Food Ctrs, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) (stating that "if someone not involved in the decisionmaking in a plaintiff's case expressed discriminatory feelings, that is not evidence that the decision was discriminatory."). As to the other allegations of harassment, it is undisputed that it was Bogdanovic, not Bochenek or any other employee, who made the decision to terminate Carroll. (Def.'s LR 56.1(a)(3) ¶ 69.) There is no evidence that Bogdanovic ever expressed any discriminatory feelings. Furthermore, because Bogdanovic was not involved in the incident, any claim that he considered it is speculation which is not enough to establish a causal relation to the termination decision. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (stating that "[s]peculation based on

13

suspicious timing alone . . . does not support a reasonable inference" of a Title VII violation).

However, there is also a requirement that isolated comments be made contemporaneously with the adverse action. *Miller*, 203 F.3d at 1005. Carroll primarily relies on Bochenek's allegedly racially discriminatory comment following Carroll's attempt to file an injury report. Even if those statements were racially motivated they were not contemporaneous with the adverse employment decision. The incident with Bochenek occurred on June 29, 1995. (Pl.'s LR 56.1(b)(3)(B) ¶ 34.) He was not discharged until August 4, 1995, more than a month later. (*Id.* ¶ 38.) The adverse employment decision may have taken place only a week after he filed a grievance with his union, but retaliation for filing a union grievance is not a proper basis for a Title VII cause of action. For these reasons, the Court holds that Carroll has not created a genuine issue as to a material fact that would require a trial with regard to the direct method of establishing race discrimination.

### B.     McDonnell Douglas Burden Shifting Method

When there is no direct evidence of racial discrimination, a plaintiff may proceed under the burden shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 148 (7th Cir. 1996); *Taylor v. Canteen Corp.*, 69 F.3d 773, 779 (7th Cir. 1995). Under this approach, a plaintiff must first establish a *prima facie* case of racial discrimination. *Our Lady*, 77 F.3d at 148; *Taylor*, 69 F.3d at 779. This creates a presumption that the

employer unlawfully discriminated against the employee. *Our Lady*, 77 F.3d at 148; *Taylor*, 69 F.3d at 779. A *prima facie* case of racial discrimination is established if Carroll can show that: (1) he belongs to a protected class; (2) he met his employer's reasonable expectations; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside of his protected class more favorably. *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 884 (7th Cir. 2001); *Our Lady*, 77 F.3d 148; *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994). If a *prima facie* case is successfully established the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. *See Our Lady*, 77 F.3d at 149; *Taylor* 69 F.3d 780. If the defendant meets this burden, the presumption of discrimination is rebutted and the plaintiff is required to produce evidence showing that the employer's proffered reason was pretextual and that the real reason was discriminatory. *Our Lady*, 77 F.3d at 149; *Taylor* 69 F.3d 780.

There is no dispute that Carroll is in a protected class because he is black or that he suffered an adverse employment action because he was terminated. However, there is a dispute as to whether he met Yellow Freight's reasonable, or legitimate, exceptions. *See Coco v. v. Elmwood Care, Inc.*, 128 F.3d 1177, 1178 (7th Cir. 1997) (stating that the employee "is out of luck if he can't show that he was meeting his employer's legitimate expectations."). Yellow Freight does not dispute that job performance was not a factor in Carroll's termination. (Pl.'s LR 56.1(b)(3)(B) ¶ 39.) However, Yellow Freight contends that Carroll did not meet its legitimate expectation of employee honesty. (Def.'s Br. at 8-10; Def.'s Reply Br. at 8-10.)

In *Contreras v. Sunscast Corp.*, the Court of Appeals stated "[t]hough we

15

recognize that coming to work, *not falsifying documents*, and not being insubordinate, are usually implicit expectations that an employer has for his or her employees, by putting these requirements in [the employer's] Work Rules, there can be no claim that these were not legitimate expectations of the company." 237 F.3d 756, 760 (7th Cir. 2001), *cert. denied*, 534 U.S. 824 (2001) (emphasis added). The inquiry into the legitimacy of an employer's expectations is whether they are bona fide expectations. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000). "It is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers." *Id.* at 1090. Thus, so long as employee honesty was a bona fide expectation of the Yellow Freight, the question becomes whether Carroll met that expectation. *Id.*; *see Worlds v. Nat'l R.R. Passenger Corp.*, No 84 C 10027, 1988 WL 139252, at *3 (N.D. Ill. Dec. 22, 1998) (stating that the employee's "alleged dishonesty undermined his qualifications to rejoin [the employer].")

There is no question that Yellow Freight had a bona fide expectation that its employees would be honest. Like the employer in *Contreras*, Yellow Freight's policy could be found in the Human Resources Policy Manual (Def.'s LR 56.1(a)(3) ¶ 68; Carroll Dep., Ex. 18, and the employment application itself (Carroll Dep., Ex. 2). In fact, the employment application makes clear that any omission or misrepresentation of any material fact is grounds for discharge at any time. (Def.'s LR 56.1(a)(3) ¶ 66; Carroll Dep., Ex. 2.) Carroll signed the application just below that section.. (Carroll Dep., Ex. 2). There is also no dispute that Carroll had been convicted of two felonies prior to completing the application. His failure to check the "Yes" box amounted to an omission

16

of that material fact and a misrepresentation as to his criminal record. Thus, Carroll failed to meet Yellow Freight's clearly articulated expectation of honesty on employment applications establishing grounds for his discharge at any time. Therefore, Carroll has not satisfied the second element of his *prima facie* case of discrimination.

However, even assuming that Carroll could satisfy the second element he cannot satisfy the fourth. The fourth element requires a showing that the employer treated similarly situated employees outside the protected class more favorably. *Gordon*, 246 F.3d at 886; *Our Lady*, 77 F.3d 148; *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994). Yellow Freight has provided evidence that it fired six non-black employees for falsifying their employment applications. (Def.'s LR 56.1(a)(3) ¶ 71.) Carroll does not dispute this fact. (Pl.'s LR 56.1(b)(3)(B) ¶ 71.) He claims that Yellow Freight did not fire two other non-black employees for falsifying their applications. (Pl.'s Resp. Mem. at 16.) However, he has presented no evidence that either of these employees actually falsified their applications. To the contrary, he admits he has no personal knowledge as to whether one of the employees, Rocco Leuzzi, lied on his application about being fired from a previous job. (Carroll Dep. at 143.) He also admits that he only "heard around the shop," but did not know, that the other employee, Scottie Austin, lied on his application. (Carroll Dep. at 145-46.) Carroll's reliance on information allegedly given to him by other Yellow Freight employees amounts to nothing more than sheer speculation and inadmissible hearsay that other similarly situated employees were treated differently than him. Speculation is insufficient to defeat summary judgment. *Borcky v. Maytag Corp.*, 248 F.3d 691, 695 (7th Cir. 2001). Furthermore, a nonmovant cannot rely on hearsay in summary judgment proceedings. *Minor v. Ivy Tech State Coll.*, 174 F.3d

855, 856 (7th Cir. 1999). Therefore, because Carroll cannot establish a *prima facie* case of discrimination, the Court grants summary judgment in favor of Yellow Freight. Because Carroll cannot satisfy elements (2) or (4), the Court need not address whether Yellow Freight's proffered reason for Carroll's termination was a pretext for race discrimination.

## CONCLUSION

For the reasons set forth in this Memorandum Opinion and Order, the Court grants defendant's motion for summary judgment [doc. no. 31-1]. This case is hereby terminated.

SO ORDERED          ENTER:   9/23/03

*Ronald A. Guzman*
HON. RONALD A. GUZMAN
United States Judge